297 F.2d 58
 Paul DE LUCIA, Plaintiff-Appellant,
v.
W. T. FLAGG, District Director, Chicago District, Immigration and Naturalization Service, Department of Justice, United States of America, Defendant-Appellee.
 No. 13365.
 United States Court of Appeals Seventh Circuit.
 December 4, 1961.
 Rehearing Denied January 11, 1962.
 
 William Scott Stewart, Chicago, Ill., for appellant.
 James P. O'Brien, U. S. Atty., Robert N. Caffarelli and John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., Charles Gordon, Regional Counsel for Northwest Region, Immigration and Naturalization Service, Washington, D. C., of counsel, for appellee.
 Before KNOCH, KILEY and SWYGERT, Circuit Judges.
 SWYGERT, Circuit Judge.
 
 
 1
 This is an appeal from a summary judgment sustaining a deportation order. The order was issued after a hearing before a special inquiry officer of the Immigration and Naturalization Service. The respondent, Paul De Lucia, appealed the ruling to the Board of Immigration Appeals. The appeal was dismissed. The respondent thereafter sought a review in the District Court.
 
 
 2
 The questions presented are: (1) Whether the findings of the special inquiry officer are supported by substantial evidence, (2) whether the retrospective provisions of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1101 et seq.) are applicable to an alien excludable at the time of his entry under the Passport Act of 1918 (22 U.S.C.A. §§ 223-226), and (3) whether the respondent was afforded a fair hearing before the administrative tribunal.
 
 
 3
 De Lucia, a native and citizen of Italy, entered the United States at New York City August 12, 1920. He was naturalized September 27, 1928, by order of the United States District Court for the Northern District of Illinois. A decree cancelling his certificate of naturalization was entered June 11, 1957, in the same court by Judge LaBuy. United States v. De Lucia, D.C., 163 F.Supp. 36. The cancellation was based on a finding that respondent falsely assumed the name of Paul Maglio when he entered this country; that he failed to disclose his true identity; and that he concealed other material facts. This Court affirmed. 7 Cir., 256 F.2d 487. Certiorari was denied by the Supreme Court. 358 U.S. 836, 79 S.Ct. 59, 3 L.Ed.2d 72.
 
 
 4
 The deportation proceeding was initiated by an order to show cause wherein it was charged that respondent when he entered the United States was not in possession of a passpart or other official document showing his origin and identity and that he had been convicted of the crime of voluntary homicide and sentenced to prison prior to his entry; that as a consequence he was deportable by reason of § 241(a) (1) of the Immigration and Nationality Act of 1952 (8 U.S. C.A. § 1251) in that he was within one or more of the classes excludable by law existing at the time of his entry, to-wit: A person who had not presented a passport or other travel document showing his origin and identity as required by the Passport Act of 1918 and the Executive Order in effect at the time of entry. (Exec. Order No. 2932, August 18, 1918); also, a person who had been convicted of a crime involving moral turpitude prior to entry as proscribed by Section 3 of the Naturalization and Immigration Act of 1917 (8 U.S.C. 136).
 
 
 5
 By stipulation of counsel, the transcript of the testimony and the exhibits submitted to Judge LaBuy in the naturalization proceeding with certain immaterial exceptions were made a part of the record considered by the Special Inquiry Officer in the deportation proceeding. Since a recital of this evidence is contained in Judge LaBuy's opinion, it is deemed unnecessary to repeat the evidence in detail here.
 
 
 6
 Section 1(a) of the Passport Act of 1918 authorized the President to issue rules and regulations covering the entry and departure of all aliens. Pursuant to this authorization, Executive Order 2932 was issued August 8, 1918. Section 5 of the Order defined a passport as one "which shows the identity and nationality of the individual for whose use it was issued. * * *" Section 31 of the Order provided that "no alien shall be allowed to enter the United States unless he bears a passport duly visaed in accordance with the terms of the Joint Order of the Department of State and the Department of Labor issued July 26, 1917." The Joint Order required each alien entering the United States "to present a valid passport or other official document in the nature of a passport, satisfactorily establishing his identity and nationality. * * *"
 
 
 7
 The Special Inquiry Officer found that respondent at the time he entered the United States did not present a passport showing his true identity in that he was not the person described therein and accordingly, the passport he presented did not meet the requirements of Executive Order 2932. He concluded that, because of this, respondent was not entitled to enter the United States under the provisions of the Order and the underlying Passport Act of 1918, and finally, as a consequence, respondent was excludable under the then existing laws and is presently deportable under the provisions of § 241(a) (1) of the Immigration and Nationality Act of 1952.
 
 
 8
 The evidence showed that in his naturalization petition the respondent stated that his name was Paul Maglio; that he arrived at the port of New York August 10, 1920 on the S.S. Ryndam; that he was born in Apricena, Italy, July 10, 1898; and that his mother's maiden name was Nunzia Maria Torelli. An alien registration form executed by the respondent in 1958 contained the same information as to name and manner of entry. The records of the S.S. Ryndam, which sailed from Boulogne August 1, 1920, listed a passenger under the name of Paolo Maglio who was born in Apricena and whose father was Enrico Maglio.
 
 
 9
 The respondent did not produce his passport at the hearing as requested. The Officer concluded, however, that he possessed a passport at the time of his entry into this country because, as the evidence showed, if he were not in such possession, he would have been detained at the point of entry for a Board of Special Inquiry and a notation of this would have been made on the ship's manifest.
 
 
 10
 The evidence also showed that one Paul Maglio exists and that he entered this country August 3, 1920 on the S.S. Duca Degli Abruzzi nine days before respondent's entry; that he was born July 10, 1898 in Apricena, Italy; that his mother's maiden name was Nunzia Maria Torelli; and that his father was Enrico Maglio. This Paul Maglio is not the respondent. The evidence showed that respondent was born Felice De Lucia November 14, 1897, in Naples, Italy; that his mother's maiden name was Maria Annunciata; and that his father was Antonio De Lucia.
 
 
 11
 This recital of facts makes it apparent that De Lucia materially misrepresented his name, age, birthplace and parentage, and that he assumed the identity of another, namely, Paul Maglio. Accordingly, there was substantial evidence before the Special Inquiry Officer to find that respondent entered this country without a valid passport showing his identity.
 
 
 12
 The evidence further establishes that respondent is the same person as the Felice De Lucia who was charged in Italy, in 1917, with the crime of voluntary homicide. Felice De Lucia was found guilty by a jury of voluntary homicide "with grave provocation" and carrying a gun "under extenuating circumstances." He was sentenced to imprisonment for a period of three years. The sentence was reduced because of the extenuating circumstances. The Hearing Officer concluded that respondent had been convicted of a crime involving moral turpitude.
 
 
 13
 It appears from the conviction record that the homicide was voluntarily committed and that a sentence was imposed. The term "voluntary" indicates an intent to kill and the fact that a sentence was imposed negates any possibility that the killing was justifiable. So long as the homicide is voluntary and not justifiable no amount of provocation can remove it from the class of crimes involving moral turpitude. United States ex rel. Sollano v. Doak, D.C., 5 F.Supp. 561; Holloway v. Holloway, 126 Ga. 459, 55 S.E. 191, 7 L.R.A.,N.S., 272. Accordingly, we conclude that there was substantial evidence upon which the Special Inquiry Officer found that respondent was a person who was excludable under Section 3 of the Immigration Act of February 5, 1917, and therefore subject to deportation under the Immigration and Nationality Act of 1952.
 
 
 14
 Respondent contends that the Hearing Officer erred in referring to the Italian Code in his decision as to moral turpitude since no proof of the foreign law was made at the hearing. We do not reach this question because, in our view, it was only necessary for the Hearing Officer to consider the record of conviction and apply the prevalent standards of what constitutes moral turpitude to reach his conclusion.
 
 
 15
 Respondent argues that Section 405(a) of the 1952 Immigration and Nationality Act (8 U.S.C.A. § 1101 Note) has preserved to him a status of non-deportability. He further argues that the Act of February 5, 1917 (8 U.S.C. 155) required the government to bring deportation proceedings against an alien within five years of his entry and that it was not the intent of Congress in enacting the 1952 Act to erase this limitation.
 
 
 16
 Respondent cannot avail himself of the protection contained in the savings provision of Section 405(a). This section provides among other things that prior statutes and statuses shall be continued in force and effect "* * * unless otherwise specifically provided therein * * *." The Supreme Court in Lehmann v. Carson, (353 U.S. 685, 77 S.Ct. 1022, 1024, 1 L.Ed.2d 1122) held that Section 241 (a) (1) of the 1952 Act does otherwise specifically provide for the deportation of any alien who at the time of entry was excludable by the law existing at that time, and that Section 241(d) makes 241(a) applicable to all aliens notwithstanding (1) that any such alien entered the United States prior to 1952 or (2) that the facts by reason of which any such alien belongs to an excluded class occurred prior to 1952. The Court concluded that it was "indisputable, therefore, that Congress was legislating retrospectively, as it may do * * *."
 
 
 17
 Respondent attacks the fairness of the administrative hearing with his claim that an improper inference was drawn from his refusal at the hearing to answer questions concerning his entry. Section 291 of the Immigration and Nationality Act (8 U.S.C.A. § 1361) casts the burden of proof in a deportation proceeding upon the respondent to show the time, place and manner of his entry. It is respondent's contention that his reliance upon the Fifth Amendment in refusing to give additional information resulted in an inference by the Hearing Officer that the Section 291 burden was not met.
 
 
 18
 Without reaching the question of whether such an inference could be made, it is apparent from the record that the Officer did not rely upon any such inference. He recognized the government's counter burden of showing unlawful entry and there is ample evidence that this burden was sustained.
 
 
 19
 While respondent may have been within his rights in refusing to testify at the hearing, it does not follow that his reliance on the Constitutional protection can be used as a weapon to attack the fairness of the hearing in claiming that the government could only discharge its burden of proving his deportability by drawing unwarranted inferences from his refusal to testify.
 
 
 20
 Respondent contended in the District Court and asserts here that in connection with his naturalization proceeding a certificate of arrival was issued by the immigration authorities verifying the information stated in his application for citizenship and which related to his entry into this country; that this certificate of arrival was part of the basis of the admission order; that Judge LaBuy made no finding in the denaturalization proceeding that the certificate was improperly obtained; and that, accordingly, the admission proceeding pertaining to the certificate stands as a bar to the present deportation. In other words, respondent contends that this constitutes res judicata of lawful entry.
 
 
 21
 The judgment entered in the denaturalization proceeding cancelling respondent's certificate of citizenship nullifies any basis upon which the doctrine of res judicata can apply. Moreover, a certificate of arrival issued by immigration authorities which is based on records that do not reflect the true facts can in no manner be used to preclude the deportation of an alien who entered the country illegally.
 
 
 22
 We affirm the District Court's judgment sustaining the order of deportation.