**Luis Javier MOSQUERA–PEREZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 93–1044.**

United States Court of Appeals, First Circuit.

Heard June 11, 1993.

Decided Sept. 10, 1993.

Nancy B. Norman, Boston, MA, for petitioner.

Robert Kendall, Asst. Director, Civ. Div.; Office of Immigration Litigation, with whom Stuart E. Schiffer, Acting Asst. Atty. Gen., Civ. Div., Washington, DC, was on brief, for respondent.

Before SELYA, CYR and BOUDIN, Circuit Judges.

CYR, Circuit Judge.

Petitioner Luis Javier Mosquera–Perez ("Mosquera"), a resident alien convicted of an "aggravated felony," challenges a final order of the Board of Immigration Appeals ("BIA") denying his application for a withholding of deportation. We deny the petition for review.

**I**

**BACKGROUND**

Mosquera, a citizen of Colombia, entered the United States in June, 1980, and became a permanent United States resident in May, 1989. *See* 8 U.S.C. § 1255(a). On May 3, 1990, he was convicted of possessing one-half ounce of cocaine, with intent to distribute, in violation of Mass.Gen.L. ch. 94C, § 32A. Mosquera received a suspended thirty-month prison sentence and three years' probation, with community service.

On January 3, 1991, the Attorney General issued an order to show cause why Mosquera should not be deported as an alien convicted of an "aggravated felony," pursuant to 8

U.S.C. § 1251(a)(2)(A)(iii), (B)(i),[1] based on his Massachusetts drug conviction. At a preliminary hearing before an Immigration Judge, Mosquera was found deportable and, as an alien convicted of an aggravated felony, ineligible for either political asylum, see 8 U.S.C. § 1158(d),[2] or withholding of deportation,[3] see 8 U.S.C. § 1253(h). The BIA affirmed.

## II

## DISCUSSION

Our jurisdiction is founded in Section 106(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1105a(a). See Ravindran v. INS, 976 F.2d 754, 756 (1st Cir. 1992); Alvarez–Flores v. INS, 909 F.2d 1, 2 (1st Cir.1990). Mosquera concedes that the conduct underlying his state-law conviction constituted an "aggravated felony" under the INA, see 8 U.S.C. § 1101(a)(43), and that he is therefore precluded from applying for asylum, see 8 U.S.C. § 1158(d). He contends, nonetheless, that his aggravated felony conviction does not preclude a withholding of deportation under 8 U.S.C. § 1253(h)(2)(B).[4]

### A. *Effect of Aggravated Felony Conviction on Eligibility for Withholding of Deportation*

■ Whether an aggravated felony conviction constitutes an absolute bar to withholding of deportation under section 1253(h)(2)(B) presents a pure issue of statutory construction for plenary review, see Skidgel v. Maine Dept. of Human Servs., 994 F.2d 930 (1st Cir.1993), and an issue of first impression in this circuit. We employ traditional tools of statutory construction for determining congressional intent, see Dole v. United Steelworkers of America, 494 U.S. 26, 35, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990) (quoting

---

1. Section 1251 provides, in relevant part:
   (a) Classes of deportable aliens. Any alien ... in the United States shall, upon the order of the Attorney General, be deported if the alien is within one or more of the following classes of deportable aliens:
   ....
   (2) Criminal offenses.
   (A) General Crimes

   (iii) Aggravated felony. Any alien who is convicted of an aggravated felony at any time after entry is deportable.
   ....
   (B) Controlled substances

   (i) Conviction. Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.
   8 U.S.C. § 1251(a)(2)(A)(iii), (B)(i).

2. Section 1158(d) provides: "An alien who has been convicted of an aggravated felony ... may not apply for or be granted asylum." 8 U.S.C. § 1158(d). Section 1158(d) was added to the Immigration and Nationality Act by the Immigration Act of 1990.

3. Asylum and withholding of deportation are distinct forms of relief for aliens facing persecution in the nation of origin. The Attorney General has discretion to grant asylum, see 8 U.S.C. § 1158(a); withholding of deportation, in con-

trast, is mandatory when deportation to a particular nation would threaten the alien's life or freedom on account of race, religion, nationality, membership in a particular social group, or political opinion, see 8 U.S.C. § 1253(h)(1). Asylum confers broader benefits than a withholding of deportation: an alien granted asylum may become a lawful permanent resident; withholding of deportation is "country-specific," in the sense that deportation to a "hospitable" country is not precluded. In re Salim, 18 I. & N.Dec. 311, 315 (1982); see INS v. Cardoza–Fonseca, 480 U.S. 421, 428 n. 6, 107 S.Ct. 1207, 1212 n. 6, 94 L.Ed.2d 434 (1987).

4. Mosquera initially asserted a procedural due process claim as well. He argued that he was entitled to present evidence that he was not a "danger to the community," even though he had been convicted of an "aggravated felony." The evidence would have shown that the Massachusetts drug conviction involved a small amount of cocaine, that he had no prior arrests or convictions, and that he has strong family and community ties in the United States. The Fifth Amendment claim was abandoned at oral argument.

   In addition, Mosquera's reply brief on appeal attempted for the first time to raise an equal protection claim that application of the *Frentescu* multi-factor test exclusively to aliens convicted of crimes other than aggravated felonies creates an unconstitutional classification. See infra at pp. 557–58. As this claim was not presented to the BIA, we decline to address it. See Massachusetts, Dep't of Pub. Welfare v. Secretary of Agric., 984 F.2d 514, 523–24 (1st Cir.1993) (discussing administrative waiver).

*NLRB v. Food and Commercial Workers,* 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987)), beginning with the language of the statute.

We "assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose," *Stowell v. Ives,* 976 F.2d 65, 69 (1st Cir.1992) (quoting *Morales v. Trans World Airlines, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992)), and we "resort to the legislative history and other aids of statutory construction only when the literal words of the statute create ambiguity or lead to an unreasonable result," *id.* (quoting *United States v. Charles George Trucking Co.,* 823 F.2d 685, 688 (1st Cir.1987)). If the statutory language makes the intent of Congress clear and unambiguous, we give full effect to that intent; if the statute is "silent or ambiguous with respect to the specific issue," however, we do not simply impose our own construction on the statute, but give due deference to the BIA's interpretation of the INA unless it is arbitrary, capricious, or manifestly contrary to the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *see also INS v. Cardoza–Fonseca,* 480 U.S. 421, 445 n. 29, 107 S.Ct. 1207, 1220 n. 29, 94 L.Ed.2d 434 (1987); *Alvarez–Flores,* 909 F.2d at 3. Nonetheless, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9.

Section 1253(h) provides as follows:

(1) The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

(2) Paragraph (1) shall not apply to any alien if the Attorney General *determines* that—

. . . . .

(B) the alien, *having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;*

. . . .

*For purposes of subparagraph (B), an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime.*

8 U.S.C. § 1253(h) (emphasis added). Mosquera argues that section 1253(h)(2)(B) contemplates a two-part analysis for determining whether an alien is precluded from a withholding of deportation: once it is determined that an alien has been convicted of a "particularly serious crime," a separate factual determination must be made that the alien poses a danger to the community of the United States.[5]

### 1. *Plain Language of Section 1253(h)(2)(B)*

Mosquera contends that the phrase "having been convicted ... of a particularly serious crime" modifies the word "alien" and thus *narrows* the universe of aliens who may be determined a "danger to the community." Mosquera further insists that a contextual comparison of section 1253(h) with the asylum provisions in section 1158(d) demonstrates that Congress well understood how to legislate a *per se* bar to eligibility for a withholding of deportation had it so intended.[6] We agree. But we think the statutory

---

**5.** The Fifth, Ninth, and Eleventh Circuits have rejected the contention that § 1253(h)(2)(B) requires the dual showing urged by Mosquera. *See Urbina–Mauricio v. INS,* 989 F.2d 1085, 1087–88 (9th Cir.1993); *Martins v. INS,* 972 F.2d 657, 660–61 (5th Cir.1992); *Arauz v. Rivkind,* 845 F.2d 271, 275 (11th Cir.1988). The Eleventh Circuit addressed the issue before § 1253(h) was amended by the Immigration Act of 1990, however. *See infra* p. 557 (discussing 1990 amendment).

**6.** Mosquera also argues that the BIA's interpretation ignores the statutory language requiring a *determination* by the Attorney General, since no further determination would be necessary once an alien had been convicted of an aggravated felony. We are not persuaded. Mosquera overlooks the fact that section 1253(h)(2)(B) requires the Attorney General to determine, in every case, whether an alien was convicted of an aggravated felony (or some other "particularly serious

language is more ambiguous than Mosquera suggests.

Mosquera asks, with considerable logical force, why Congress would have included the "danger to the community" clause at all if it intended that an alien's conviction of "a particularly serious crime" be dispositive and that there be no separate determination that the alien poses a danger to the community. *See Allende v. Shultz*, 845 F.2d 1111, 1119 (1st Cir.1988) (" 'A familiar canon of statutory construction cautions the court to avoid interpreting a statute in such a way as to make part of it meaningless....' ") (quoting *Abourezk v. Reagan*, 785 F.2d 1043, 1054 (D.C.Cir.1986)); *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir.1985) ("All words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous."). On the other hand, as the government argues, had Congress intended two separate determinations, surely it could have made its intention plain, simply by writing section 1253(h)(2)(B) with "two coordinate clauses joined by a conjunction," *viz.*, "the alien has been convicted by a final judgment of a particularly serious crime *and* constitutes a danger to the community of the United States." *Ramirez–Ramos v. INS*, 814 F.2d 1394, 1397 (9th Cir.1987) (emphasis added); *see Zardui–Quintana v. Richard*, 768 F.2d 1213, 1222 (11th Cir.1985) (Vance, J. concurring in result) (same); *see also Martins v. INS*, 972 F.2d 657, 660–61 (5th Cir.1992); *Arauz v. Rivkind*, 845 F.2d 271, 275 (11th Cir.1988); *Crespo–Gomez v. Richard*, 780 F.2d 932, 934 (11th Cir.1986). Moreover, Mosquera's contextual argument is counterbalanced by the presence of 8 U.S.C. § 1226(e)(2)–(3), governing parole for aliens convicted of aggravated felonies, which establishes various criteria for assessing recidivism to guide the Attorney General in determining whether aggravated felons will pose a danger to society.[7] Thus, in a closely analogous context, section 1226(e)(2)–(3) demonstrates congressional cognizance of its option to require a separate determination of dangerousness to the community in regard to aliens who apply for withholding of deportation following an aggravated felon conviction. As the statutory language does not clearly and unambiguously favor either interpretation of section 1253(h), we turn to the legislative history.

### 2. *Legislative History*

Mosquera invites our attention to two particular components of the legislative history of section 1253(h). First, he cites several unenacted bills which would have imposed a *per se* ban on withholding deportation of aggravated felons. Second, he cites a letter to the INS from Senator Edward M. Kennedy, Chairman of the Senate Subcommittee on Immigration and Refugee Affairs and a cosponsor of the Immigration Act of 1990, *see infra* note 11, to the effect that Congress, in section 1253(h)(2)(B), contemplated that a showing of dangerousness to the community would be necessary in addition to proof of conviction of an aggravated felony.

Before we evaluate these particular developments, it is helpful to place section 1253(h) in historical perspective. Prior to 1980, section 1253(h) conferred discretion upon the Attorney General to withhold the deportation of any alien who would be subject to persecution in the receiving nation on account of race, religion, or political opinion. The Refugee Act of 1980, Pub.L. 96–212, 94 Stat. 107 (1980), amended section 1253(h) to comport with Article 33 of the United Nations Protocol Relating to the Status of Refugees ("Protocol"), Jan. 31, 1967, 19 U.S.T. 6223 (1968), to which the United States had acceded in 1968. The Protocol bound its parties to the substantive provisions of Articles 2 through 34 of the United Nations Convention Relating to the Status of Refugees ("Convention"),

---

crime") *and* whether the judgment of conviction is final.

**7.** The Attorney General may release an alien whose country of origin denies or unduly delays acceptance of the alien, but only if "a procedure for review of each request for relief has been established," the procedure "includes consideration of the severity of the felony committed by the alien," and "the review concludes that the alien will not pose a danger to the safety of other persons or property." 8 U.S.C. § 1226(e)(2)–(3). Section 1226(e)(2)–(3), like § 1253(h)(2)(B), was added by the Immigration Act of 1990.

July 28, 1951, 189 U.N.T.S. 150.[8] Article 33 of the Convention provides:

1. No Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.

2. The benefit of the present provision may not, however, be claimed by a refugee for whom there are reasonable grounds for regarding as a danger to the security of the country in which he is, or who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of that country.

19 U.S.T. at 6276.[9]

Between 1980 and 1990, the operative standard for determining which crimes were "particularly serious" for section 1253(h)(2)(B) purposes was that set forth by the BIA in *In re Frentescu*, 18 I. & N. Dec. 244 (1982):

> While there are crimes which, on their face, are "particularly serious crimes" or clearly are not "particularly serious crimes," the record in most proceedings will have to be analyzed on a case-by-case basis. In judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the

type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.

*Id.* at 247. Once an alien's crime was deemed "particularly serious," however, *the BIA interpreted section 1253(h) as not requiring a separate determination that the alien posed a danger to the community. In re Carballe*, 19 I. & N. Dec. 357 (1986) ("The phrase 'danger to the community' is an aid to defining a 'particularly serious crime,' not a mandate that administrative agencies or the courts determine whether an alien will become a recidivist.") *modified on other grounds, In re Gonzalez*, 19 I. & N. Dec. 682 (1988).

The Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978, 5053 (1990), obviated the *Frentescu* analysis for aggravated felonies by appending the following paragraph to section 1253(h):

> For purposes of subparagraph (B), an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime.

8 U.S.C. § 1253(h) (1993).[10] The BIA has continued to follow *Carballe* since the 1990 amendment to section 1253(h), by requiring no separate finding of dangerousness to the community in the case of an alien convicted of an aggravated felony. *See, e.g., Matter of A—— A——*, Int.Dec. 3176 (B.I.A.1992); *Matter of K——*, Int.Dec. 3163 (B.I.A.1991); *Matter of U——M——*, Int.Dec. 3152 (B.I.A.1991).

---

**8.** The United States is not a signatory to the Convention.

**9.** Following the passage of the Refugee Act of 1980, section 1253(h) read:
(1) The Attorney General shall not deport or return any alien (other than [certain aliens who participated in the Nazi persecution or genocide]) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.
(2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—
(A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;
(B) the alien, having been convicted by a final judgment of a particularly serious crime,

constitutes a danger to the community of the United States;
(C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States; or
(D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.
8 U.S.C. § 1253(h) (1980).

**10.** An "aggravated felony" includes "any drug trafficking crime as defined in [18 U.S.C. § 924(c)(2)]." 8 U.S.C. § 1101(a)(43) (1993). A "drug trafficking crime" is "any felony punishable under the Controlled Substances Act (21 U.S.C. [§] 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. [§] 951 *et seq.*), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. [§] 1901 *et seq.*)." 18 U.S.C. § 924(c)(2).

The unenacted bills to which Mosquera directs our attention would have added a paragraph to the list of exclusions in section 1253(h)(2), making withholding of deportation unavailable to aliens convicted of an "aggravated felony." *See* S. 2957, 101st Cong., 2d Sess. § 12 (1990); S. 2652, 101st Cong., 2nd Sess. § 6112 (1990); H.R. 5284, 101st Cong., 2d Sess. § 5 (1990). Mere nonadoption of these legislative bills is not probative of congressional intent in this instance, however, since " 'several equally tenable inferences' may be drawn from such inaction, 'including the inference[,] [eminently reasonable here,] that the existing legislation already incorporated the offered change.' " *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 650, 110 S.Ct. 2668, 2678, 110 L.Ed.2d 579 (1989) (quoting *United States v. Wise*, 370 U.S. 405, 411, 82 S.Ct. 1354, 1358, 8 L.Ed.2d 590 (1962)); *see also Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 382 n. 11, 89 S.Ct. 1794, 1802 n. 11, 23 L.Ed.2d 371 (1969) ("unsuccessful attempts at legislation are not the best of guides to legislative intent"). In these circumstances, it is no less reasonable to infer that the proposed amendment failed of adoption because Congress was satisfied with the administrative and judicial construction then being given section 1253(h)(2) than to assume that Congress intended to signal its dissatisfaction with the prevailing construction.

Mosquera refers us to a letter from Senator Kennedy to the INS, apparently suggesting that the BIA's current interpretation of section 1253(h) is contrary to congressional intent.[11] As a general rule, however, post-enactment legislative history is accorded less weight than contemporaneous commentary. *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1277 n. 8 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2987, 125 L.Ed.2d 682

(1993); *cf. Regional Rail Reorganization Act Cases*, 419 U.S. 102, 132, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974) (post-passage remarks cannot change Congress' intent). Even if we were to give weight to this letter, it would be counterbalanced by the pre-passage legislative history.[12] Thus, our survey of the legislative history of the Refugee Act of 1980 and the Immigration Act of 1990 yields no clear support for Mosquera's proposed interpretation of section 1253(h). Indeed, the Fifth Circuit, considering the identical question in *Martins*, 972 F.2d at 661, found unambiguous support for the BIA's interpretation in the legislative history accompanying the Refugee Act. *See supra* note 12; *see also Zardui–Quintana*, 768 F.2d at 1220–23 (Vance, J., concurring).

### 3. *Reasonableness of Agency Interpretation*

Since our examination of the language, structure, and history of section 1253(h) discloses no clear and unambiguous contrary legislative intent, the BIA's interpretation is entitled to deference unless arbitrary, capricious, or manifestly contrary to the statute. *Chevron*, 467 U.S. at 842–45, 104 S.Ct. at 2781–83.

Mosquera argues that the BIA's decision is poorly reasoned and inconsistent with prior Board decisions, thus entitled to no deference. Mosquera concedes that the BIA consistently has interpreted section 1253(h), before and since passage of the Immigration Act of 1990, as requiring but one determination—that the alien has been convicted of a "particularly serious crime," *see Carballe*, 19 I. & N. Dec. at 357. But he contends that a separate finding of dangerousness to the community was not necessary prior to 1990 because the *Frentescu* multi-factor test for identifying "particularly serious crimes" required the Attorney General to consider dangerousness to the community. He argues that nothing in the legislative history of the

---

**11.** Mosquera simply cites to *Martins*, 972 F.2d at 661, which referenced Senator Kennedy's letter:

> Martins' congressional intent argument is based on a letter to the INS from Senator Edward Kennedy[]. . . . The letter suggests that Congress intended to require the INS to make a dual showing of a conviction for an aggravated felony and a danger to the community.

*Id.* at 661.

**12.** The Fifth Circuit found this argument "in direct conflict with the legislative history accompanying the Refugee Act" inasmuch as the House Judiciary Committee Report, H.R.Rep. No. 608, 96th Cong., 1st Sess. 18 (1979) "clearly states that the act intended to make those aliens[ ] 'who have been convicted of a particularly serious crime which makes them a danger to the community[ ]' ineligible for a withholding of deportation." *Id.* (quoting H.R.Rep. No. 608, 96th Cong., 1st Sess. 18 (1979)).

Immigration Act suggests that Congress, simply by equating aggravated felonies with "particularly serious crimes," intended to dispense with agency consideration of the alien's dangerousness to the community. He notes that the BIA continues to conduct individualized "dangerousness" determinations in cases involving crimes not classified in 8 U.S.C. § 1101(a)(43) as "aggravated felonies." *See, e.g., Matter of B——*, Int.Dec. 3164 (B.I.A. 1991) (*Frentescu* analysis used to determine whether an "aggravated battery" was a "particularly serious crime"). According to Mosquera, the BIA's position is based on faulty reasoning in conflict with the statutory language. He commends instead the reasoning adopted by the Ninth Circuit in *Beltran–Zavala v. INS*, 912 F.2d 1027 (9th Cir.1990), where the court held that "the language of 8 U.S.C. § 1253(h)(2)(B) as interpreted in *Frentescu*, commits the BIA to an analysis of the characteristics and circumstances of the alien's conviction." *Id.* at 1032. We are not persuaded. To be sure, the Ninth Circuit did note in *Beltran–Zavala,* prior to the 1990 amendment to section 1253(h), that "[i]f Congress wanted to erect *per se* classifications of crimes precluding immigration and nationality benefits, it knew how to do so." *Id.* Thereafter, however, in *Urbina–Mauricio v. INS,* 989 F.2d 1085, 1088 (9th Cir.1993), the court—*effectively overruling Beltran–Zavala*—acknowledged that Congress had indeed enacted just such a *per se* classification by its 1990 amendment to section 1253(h)(2)(B).

The focal inquiry under *Frentescu* before 1990 was "whether the type and circumstances of the crime indicate that the alien will be a danger to the community," *Frentescu,* 18 I. & N.Dec. at 248; danger to the community inhered in the definition of "particularly serious crime" and no independent "dangerousness" determination was necessary under section 1253(h)(2)(B). Since Congress is presumed to have been "aware of an administrative or judicial interpretation of a statute, *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1977), it is reasonable to infer that Congress intended the 1990 amendment to equate aggravated felonies with "danger to the community," obviating a redundant *Frentescu* inquiry in cases involving aggravated felonies.

The interpretation of section 1253(h)(2)(B) adopted by the BIA is not unreasonable, arbitrary, or capricious. Consequently, the refusal to conduct a separate inquiry into Mosquera's dangerousness to the community was proper.

***The petition for review is denied.***