**FONG HAW TAN v. PHELAN, Acting District Director, Immigration and Naturalization Service, Port of San Francisco, Cal.**

**No. 11447.**

Circuit Court of Appeals, Ninth Circuit.

June 25, 1947.

Thos. C. Lynch and Wm. J. Chow, both of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and Edgar R. Bonsall, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before STEPHENS, HEALY and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

Fong Haw Tan seeks release from custody of the acting District Director, Immigration and Naturalization Service, Port of San Francisco, California, by habeas corpus proceedings. After issuance of a show cause order, the court dismissed the petition, and petitioner appeals.

█ Appellant, a native of China, was admitted into this country in August, 1910, as a permanent resident, and has resided here ever since. On June 11, 1925, he was indicted for the murder of two persons in separate counts of the same bill. Therein he was charged with having committed both crimes on May 22, 1925. He was convicted on both counts by the same jury on July 25, 1925. Thereafter, a distinct and separate sentence of imprisonment in the state penitentiary for the term of his natural life was pronounced upon him upon each conviction. Both crimes involved moral turpitude. The point for decision involves construction of 8 U.S.C.A. § 155(a), the relevant part of which is set out in the margin.[1]

The Director claims that appellant has been sentenced twice in the circumstances required by the statute for deportation, while appellant claims that, giving full weight to the purpose of the act, he has been sentenced but once, and hence, having resided here more than five years before the crimes were committed, he is not subject to deportation.

█ There were, as has been seen, two pronouncements of sentence upon two verdicts of guilty. Both were for imprisonment for life. In the nature of things the sentence cannot be served twice; hence, says appellant, there was but one sentence to serve.

█ The primary fault with appellant's reasoning is that the service of the sentence is taken as the basis for applying the statute, while nothing is said in the statute about service of the sentence. What the

Congress had in mind was that one who accepts the hospitality of this free country should not violate its laws. After five law-abiding years, one law infraction of the nature defined in the statute would not be taken as wholly unfitting the alien for continued residence, but two or more such infractions would do so. It thus happens that deportation results from and because of the commission of the base deed. The sentence is but the official seal that the crime was committed by the alien.

The exact point was given close analysis by this court in Nishimoto v. Nagle, 9 Cir., 44 F.2d 304, and at page 306 said: "The purpose of Congress undoubtedly was to provide for the deportation of a man who committed more than one offense involving moral turpitude for which he had been convicted and upon which conviction and sentence has been imposed; whether the sentence run concurrently or consecutively is entirely immaterial from the standpoint of the purpose of the law." Appellant, however, does not present his point without high authority, for, in considering the question where conviction had been had on more than one count for arson and the same term of imprisonment had been adjudged for each count, all to run concurrently, the second circuit court said: "* * * it is a fiction to regard the covering of several offenses by a single penalty, as the imposition of the same imprisonment anew each time. Punishment consists in the pains endured, and the lapse of the term ends these; they cannot be exacted a second time." United States ex rel. Mignozzi v. Day, 2 Cir., 51 F.2d 1019, at page 1021.

No exception to the philosophical statement can be taken, but giving it full application to the statute, we think it does not at all follow that an alien who has twice offended is not subject to deportation. It appears that the court was bearing too heavily upon what service of the sentences

---

[1] 8 U.S.C.A. § 155(a): "* * * except as hereinafter provided, any alien, who, after May 1, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry * * * shall, upon the warrant of the Attorney General, be taken into custody and deported. * * * "

means to the convict. If the deportation was based upon the suffering the sentenced one must endure, then we would readily concede that in the service of cumulative sentences deportation would be based upon a fiction. But, as we have already said, the basis for the deportation is the alien's infraction of our laws.

Illustrations are given in the Mignozzi case of possible single offenses under the narcotic laws and counterfeit laws, which may result in multiple convictions of crimes and consequent sentences which would subject the guilty one to deportation. But these, in our opinion, do no more than to impose upon the trial judge an additional element for consideration in his tremendous responsibility of measuring justly due penalties.

Judge Sibley in Opolich v. Fluckey, D.C., 47 F.2d 950, expresses his opinion on the point under consideration to the effect that concurring sentences pronounced for several related crimes closely connected in time as to their commission should be considered as one sentence. He interprets the purpose of the statute as one to rid the country of aliens who are habitual criminals. He says: "Technically he [the convict] committed four crimes, notwithstanding they were connected together and apparently in the same scheme of counterfeiting." The plurality of the pronouncement of sentences, each the same and all running concurrently, he deducts, is not proof of habitual criminality, and, therefore, such cases are not within the statute. The conclusion reached by this eminent jurist certainly presents difficulties: By what formula shall the permissible lapse of time between crimes be measured? How closely must the crimes be related to each other? Must they derive from the same impulse? Do separate crimes of different natures committed to clear the way for a main objective come within the conclusion? The statute answers none of these obtruding questions.

It cannot be doubted that Congress desired to end our hospitality to aliens of criminal tendency, and supplementary to our penal laws, it notified them that they must obey our laws or be put out. In our opinion there is no harsh injustice involved that justifies a judicial search for a limitation of the plainly expressed scope of the statute. Within five years of entry, one base act of the alien ends his permissive stay; after five years two base acts ends it.

Tassari v. Schmucker, 4 Cir., 53 F.2d 570, and Clark v. Orabona, 1 Cir., 59 F.2d 187, are in accord with our view. The latter case fully analyzes the Nishimoto and Mignozzi cases and follows the former.

Affirmed.

HEALY, Circuit Judge (concurring).

I have serious doubts whether Congress intended the deportation statute to apply to a case like this. I concur in the affirmance only for the reason that this court, in Nishimoto v. Nagle, 9 Cir., 44 F.2d 304, has already decided the point, and should, until higher authority has spoken, follow that decision.