UNITED STATES of America, Plaintiff,

v.

Adelmo NUNEZ–GARCIA, Defendant.

No. CV 01–4159–JWJ.

United States District Court, C.D. California, Western Division.

May 20, 2003.

Debra W. Yang, United States Attorney, Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, Mark C. Walters, Assistant Director, Theresa M. Healy, Attorney, State Bar No. 171566, Office of Immigration Litigation, United States Department of Justice, Civil Division, C/O Immigration and Naturalization Service, Office of the District Counsel, Los Angeles, CA, for Plaintiff.

Sandra Cannon, State Bar No. 187876, Law Offices of Sandra Cannon, Los Angeles, CA, for Defendant.

ORDER RE MOTION FOR SUMMARY JUDGMENT ON THE GOVERNMENT'S COMPLAINT TO REVOKE NATURALIZATION

JOHNSON, United States Magistrate Judge.

The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before United States Magistrate Judge Jeffrey W. Johnson in the instant action and to have the Magistrate Judge conduct any and all further proceedings in this case and order the entry of final judgment.

For the reasons set forth below, the Court grants partial summary judgment on counts two, three, and five of the Complaint to Revoke Naturalization.

## I. SUMMARY OF PROCEEDINGS

On May 7, 2001, plaintiff, the United States of America, filed a Complaint to Revoke Naturalization (hereinafter "Complaint") pursuant to 8 U.S.C. § 1451(a).[1]

The Complaint seeks to revoke and set aside the order admitting defendant Adelmo Nunez–Garcia to citizenship and to cancel his certificate of naturalization. The Complaint includes as an exhibit, the affidavit of John Miles, Associate General Counsel of the Immigration & Naturalization Service (hereinafter "INS"), showing good cause for the action. (Complaint, Exh. A.)

In five counts, the Complaint alleges that defendant illegally procured United States citizenship and that his naturalization must be revoked:

Count One: "Illegal Procurement of United States Citizenship: Defendant was Never Lawfully Admitted as a Permanent Resident";

Count Two: "Illegal Procurement of United States Citizenship: Lack of Good Moral Character—Convictions Barring Good Moral Character";

Count Three: "Illegal Procurement of United States Citizenship: Lack of Good Moral Character: Conviction Barring Good Moral Character";

Count Four: "Illegal Procurement of United States Citizenship: Lack of Good Moral Character—Defendant's False Testimony Barring Finding of Good Moral Character";

Count Five: "Procurement of United States Citizenship by Willful Misrepresentation or Concealment of a Material Fact."

---

1. Section 1451(a) provides in pertinent part: It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively . . . .

On November 18, 2002, the United States moved for partial summary judgment on counts two through five of the Complaint (hereinafter "Motion for Summary Judgment" or "MSJ"). On December 6, 2002, defendant filed a Statement of Genuine Issues of Material Facts in opposition to the summary judgment motion. On January 16, 2003, defendant filed a Supplemental Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment ("Supp.MPA"). The United States filed its Reply on January 23, 2003 ("Reply").

On January 27, 2003, the Court heard argument on the government's Motion for Summary Judgment. At the conclusion of the hearing, the Court ordered further briefing. On March 7, 2003, defendant filed a Second Supplemental Brief ("Second Supp. Br."), and the United States filed a Sur–Reply on March 18, 2003. On March 25, 2003, defendant filed a response to plaintiff's sur-reply. The Court again heard argument on April 15, 2003. Accordingly, this case is under submission and ready for decision.

## II. STATEMENT OF FACTS

On the basis of the pleadings and the evidence submitted in support thereof, the Court has compiled the following factual statement. Unless otherwise noted, for the purpose of consideration of the government's Motion for Summary Judgment, the recited facts are uncontroverted and apparently not in dispute:

On September 26, 1978, in the Los Angeles County Superior Court, defendant was convicted, pursuant to a guilty plea, of second-degree murder; he was sentenced to six years in state prison. (Appendix to MSJ, Exh. 5.)

On June 21, 1988, the INS granted defendant status as a lawful permanent resident of the United States under 8 U.S.C. § 1255(a). (Appendix to MSJ, Exh. 1D, p. 1.)

On April 10, 1990, in the Municipal Court of Los Angeles County, defendant pleaded guilty to a charge of lewd conduct in public, in violation of California Penal Code § 647(a); the court sentenced defendant to 24 months probation and a fine of $300. (Appendix to MSJ, Exh. 8.) The offense conduct occurred on March 10, 1990. (*Id.*)

On January 19, 1995, defendant filed an Application for Naturalization (Form N–400) with the INS based on his having been a lawful permanent resident for at least five years. *See* 8 U.S.C. § 1427(a). Question 15(b) of the form application asked: "Have you ever been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations?" (Appendix to MSJ, Exh. 1D.) Defendant answered the question "no." (*Id.*) Defendant's Application for Naturalization was prepared by Jose Arce, a notary public. (Supp.MPA, p. 15.) After completing the application, Mr. Arce had defendant sign it; Mr. Arce thereafter mailed it to the Los Angeles INS office. (Joint Status Report, p. 3.) Defendant signed the Application for Naturalization under penalty of perjury. (Appendix to MSJ, Exh. 1D.) He included his fingerprints with his application. (Reply, Exh. B.)

On December 14, 1995, an INS officer interviewed defendant under oath about his Application for Naturalization. It is disputed whether the INS officer specifically asked defendant about his answer to question 15(b). The United States contends that the interviewing INS officer asked defendant whether he had a criminal record and defendant replied that he did not have one. (Reply, p. 7; *see also* Appendix to MSJ, Exh. 2, p. 2.) Defendant, on the other hand, asserts that he "didn't

hear any question" about his criminal history. (Appendix to MSJ, Exh. 9, p. 50.) Based on defendant's application and interview, the INS approved defendant's Application for Naturalization. (Appendix to MSJ, Exh. 1E.) On February 22, 1996, defendant took an oath of allegiance to the United States and was issued a Certificate of Naturalization. (Appendix to MSJ, Exh. 1A.)

### III. STANDARD OF REVIEW

#### A. Denaturalization

As a cherished right, citizenship once conferred should not be taken away without the clearest justification and proof. *Gorbach v. Reno,* 219 F.3d 1087, 1100 (9th Cir.2000) (en banc). To that end, the government must prove its case for denaturalization by "clear, unequivocal, and convincing evidence, which does not leave 'the issue in doubt'" that the defendant is guilty of fraud or illegal procurement in his naturalization process. *Schneiderman v. United States,* 320 U.S. 118, 125, 158, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943); *Fedorenko v. United States,* 449 U.S. 490, 505, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981). In an action under 8 U.S.C. § 1451(a) to revoke a grant of citizenship previously conferred, the facts and the law should be construed as far as is reasonably possible in favor of the citizen. *Schneiderman v. United States,* 320 U.S. at 122, 63 S.Ct. 1333.

At the same time, "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship. Failure to comply with any of these conditions renders the certificate of citizenship 'illegally procured,' and naturalization that is unlawfully procured can be set aside." *Fedorenko,* 449 U.S. at 506, 101 S.Ct. 737. Once a court has determined the government has met its burden of proving that a naturalized citizen obtained his citizenship illegally, or by concealment of a material fact or willful misrepresentation, *it has no discretion to excuse the conduct and must enter a judgment of denaturalization. Fedorenko,* 449 U.S. at 517, 101 S.Ct. 737 (emphasis added).

#### B. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *See Poller v. CBS, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1050 (9th Cir.1995).

If the moving party meets its burden, the responding party may not defeat a motion for summary judgment "in the absence of any significant probative evidence tending to support his legal theory." *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979).

Summary judgment cannot be avoided solely on conclusory allegations; the responding party must bear his burden to produce factual evidence in support of his claim. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). Thus, the responding party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc.,* 809 F.2d at 630. Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

In making the determination whether summary judgment should be granted, the court must also consider applicable burdens of proof. *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288 (9th Cir.1987). Here, since the government's burden of proof is "clear, unequivocal, and convincing" evidence, the evidence in support of the government's summary judgment motion must meet that high standard. The question is whether "reasonable minds could differ as to the import of the evidence." *Id.* at 1289.

### IV. DISCUSSION

#### A. Relevant Law

▮ An alien is not entitled to be naturalized if, in fact, the alien was ineligible for citizenship in the first place. Under 8 U.S.C. § 1451(a), a defendant's naturalization must be revoked and his certificate of naturalization canceled if his naturalization was either "illegally procured or [was] procured by concealment of a material fact or by willful misrepresentation."[2] Naturalization is "illegally procured" when the individual is statutorily ineligible for naturalization before and including the time he

became a naturalized citizen. *Fedorenko v. United States,* 449 U.S. 490, 506, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981).

▮ Three of the requirements for a person to be eligible for naturalization are these: (1) he must have been lawfully admitted to the United States as a permanent resident; (2) he must be a person of good moral character for a period of five years preceding the filing of his naturalization application; and (3) he must have resided continuously, and must have been physically present, in the United States for the required statutory period. *See* 8 U.S.C. §§ 1427, 1429. Strict compliance with all congressionally-mandated requirements for naturalization is required. Noncompliance with any prerequisite results in the illegal procurement of naturalization and subjects the naturalization to revocation under 8 U.S.C. § 1451(a). *Fedorenko,* 449 U.S. at 506, 101 S.Ct. 737; *United States v. Szehinskyj,* 277 F.3d 331, 334 (3d Cir.2002).

Section 1427(a)(3) provides that an applicant for naturalization must be a person of good moral character for the five-year period preceding the filing of an Application for Naturalization and continuing until the applicant takes the oath of allegiance. Section 1101(f)(3) bars a finding of good moral character as to any person who has admitted commission of, or been convicted of, a crime involving moral turpitude during the period for establishing good moral character. Section 1101(f)(6) bars a finding of good moral character as to any person who, during the time for establishing good moral character, provides false testimony for the purpose of obtaining any benefit under the Immigration and Nationality Act ("INA"). Section 1101(f)(8) bars a finding of good moral character as to any

---

**2.** All further statutory references are to Title 8 of the United States Code unless otherwise

specified.

person who at any time has been convicted of an aggravated felony.

■ An alien who applies to have his status adjusted to that of a lawful permanent resident must establish that "he has not been convicted of any felony committed in the United States." 8 U.S.C. § 1255a(b)(1)(C)(ii). Any alien who has been convicted of, or who admits to having committed the essential elements of, "a crime involving moral turpitude . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(I). An exception to this provision is allowed for aliens who have committed only one crime of moral turpitude if "the maximum penalty possible for the crime of which the alien was convicted . . . did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months. . . ." 8 U.S.C. § 1182(a)(2)(A)(ii)(II). Murder is a crime of moral turpitude. *Fong Haw Tan v. Phelan*, 162 F.2d 663, 664 (9th Cir.1947), *rev'd on other grounds*, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433 (1948). Murder is also an aggravated felony. 8 U.S.C. § 1101(a)(43)(A).

**B. Summary Judgment Is Proper on the Ground Defendant Illegally Procured his Naturalization because he had Previously been Convicted of Second–Degree Murder. (Count II of the Complaint).**

■ As noted above, section 1427(a)(3) provides that an applicant for naturalization must be a person of good moral character for the five-year period preceding the filing of an Application for Naturalization and continuing until the applicant takes the oath of allegiance. Section 1101(f)(8) bars a finding of good moral character as to any person who has at any time been convicted of an aggravated felony. The crime of murder is an aggravated felony. 8 U.S.C. § 1101(a)(43)(A). The

Ninth Circuit has held that a conviction for murder, even second-degree murder, will forever preclude a finding of good moral character regardless of the date of the conviction. *Castiglia v. INS*, 108 F.3d 1101, 1103–04 (9th Cir.1997); *see also* 8 C.F.R. § 316.10(b)(1)(i) (1995).

It is undisputed that before defendant filed his Application for Naturalization, he was convicted of second-degree murder as is reflected in his judgment of conviction and his admissions in deposition. (Appendix to MSJ, Exhs. 5, 9, pp. 9, 12, 15–16.) This constitutes clear, convincing, and unequivocal evidence. Thus, as a matter of law, defendant, prior to his application, was forever precluded from satisfying the good moral character requirement for naturalization. Therefore, defendant's admission to United States citizenship in February 1996 was illegally procured and must be revoked. 8 U.S.C. § 1451(a). Once a district court finds that the defendant was never eligible in the first instance for naturalization, it has no discretion to excuse the conduct. *Fedorenko*, 449 U.S. at 517, 101 S.Ct. 737.

The Court therefore grants the government's motion for summary judgment on count two of the Complaint.

**C. Summary Judgment Is Proper on the Ground That Defendant Illegally Procured His Naturalization Because He Was Convicted of a Crime Involving Moral Turpitude During the Period for Establishing Good Moral Character. (Count III of the Complaint).**

■ Under section 1427(a)(3), no person shall be naturalized unless the person "during all the periods referred to in this subsection has been and still is a person of good moral character." The statutory period for which good moral character is required begins five years before the filing

of the naturalization application and continues until the person has taken the oath of allegiance and becomes a United States citizen. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1) (1995).

It is undisputed that defendant filed his naturalization application on January 19, 1995. (Appendix to MSJ, Exh. 1D.) It is also undisputed that defendant took the oath of allegiance on February 22, 1996. (Appendix to MSJ, Exh. 1A.) Thus, the relevant time period in the present case ran from January 19, 1990 to February 22, 1996.

Under section 1101(f)(3), an individual cannot establish good moral character if, during the statutory period, he admittedly committed or was convicted of a crime involving moral turpitude. Section 1101(f)(3) expressly incorporates as a guideline for establishing good moral character the standards for determining alien admissibility outlined in paragraphs (A) and (B) of 8 U.S.C. § 1182(a)(2). In the present case, defendant was convicted of committing a lewd act in public on March 10, 1990, within the five-year period for establishing good moral character. *See* 8 U.S.C. § 1427(a).

The exception to inadmissibility based on a conviction involving moral turpitude, set forth in 8 U.S.C. § 1182(a)(2)(A)(II), provides that such inadmissibility does not "apply to an alien who committed *only one* crime if . . . the maximum penalty possible for the crime of which the alien was convicted . . . did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months . . . ." 8 U.S.C. § 1182(a)(2)(A)(ii)(II) (emphasis added). In the case at bar, the exception is inapplicable because defendant committed, and was convicted of, more than one crime involving moral turpitude. Defendant's convictions for murder (Cal.Penal Code

§ 187) and committing a lewd act in public (Cal.Penal Code § 647(a)) are both crimes involving moral turpitude. *See Fong Haw Tan v. Phelan,* 162 F.2d at 664 (murder is crime of moral turpitude); *Rodriguez–Padron v. INS,* 13 F.3d 1455, 1458 (11th Cir.1994) (same); *Matter of Ghunaim,* 15 I & N Dec. 269, 270 (BIA 1975) (same); *see also Babouris v. Esperdy,* 269 F.2d 621 (2nd Cir.1959) (committing lewd act in public is crime of moral turpitude); *Wyngaard v. Kennedy,* 295 F.2d 184 (D.C.Cir. 1961) (same); *Matter of Alfonzo–Bermudez,* 1967 WL 14000, 12 I & N Dec. 225 (BIA 1967) (same).

Defendant contends he should be excepted from strict enforcement of the good moral character requirement of 8 U.S.C. § 1101(f)(3) because he committed only one act of moral turpitude during the relevant five-year statutory period, his murder conviction having been many years before that time period. (Supp. MPA 11.) However, it would be nonsensical to interpret the language of 8 U.S.C. § 1182(a)(2)(A)(ii)(II) as barring consideration of aggravated felonies which occurred before the five-year period because the law is unequivocal that such felonies constitute a permanent bar to naturalization. *See* 8 U.S.C. § 1101(f)(8). Further, § 1182(a)(2)(A)(ii)(II) does not even preclude consideration of misdemeanor crimes of moral turpitude outside the five-year range, where such crimes are relevant to an applicant's reformed or unreformed moral character. In fact, the regulations explicitly state that the INS may consider conduct before the five-year statutory period for this purpose. 8 C.F.R. § 316.10(a)(2).

Defendant does not dispute that he was convicted of murder in 1978 and was convicted on April 10, 1990 of committing a lewd act in public. The offense date was March 10, 1990. (*See* Appendix to MSJ,

Exh. 9, pp. 21–24.) Since this latter conduct occurred during the period defendant was required to show good moral character, and because defendant has the additional murder conviction, the lewd conduct conviction constitutes a separate factor requiring revocation of the naturalization for which defendant was not legally qualified. Unarguably, on the date he was naturalized, defendant did not meet the prerequisites for good moral character. *See Fedorenko*, 449 U.S. at 506, 101 S.Ct. 737. Accordingly, the Court grants plaintiff's motion for summary judgment on count three as well.

**D. Genuine Issues of Material Fact Exist as to the Claim that Defendant's Naturalization was Procured by False Testimony. (Count IV of the Complaint).**

Section 1101(f)(6) bars a finding of good moral character as to any person who, during the statutory period, provides false testimony to obtain naturalization. *See Bachelier v. Immigration and Naturalization Service*, 625 F.2d 902, 905 (9th Cir. 1980).

**1. *False answers to questions on Application for Naturalization.***

■ "False testimony" is limited to oral statements that are made under oath with the subjective intent, at least in part, to obtain a benefit under the INA. *Kungys v. United States*, 485 U.S. 759, 780–81, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988).

■ At the April 15, 2003 hearing, both counsel grappled with the question whether the oath affirming the contents of the naturalization application might render the application testimonial. The unequivocal precedent of the Supreme Court and Ninth Circuit Court of Appeals requires this Court to conclude that the oath did not make the application testimonial. *See Id.; Bernal v. I.N.S.*, 154 F.3d 1020, 1022–

23 (9th Cir.1998) (the term "testimony" does not encompass all statements, or even all statements made under oath); *Phinpathya v. INS*, 673 F.2d 1013, 1018–19 (9th Cir.1981) (false written statement in an application to the INS for suspension of deportation did not constitute "false testimony" because it was not intended to establish proof of a fact to a court or tribunal), *rev'd on other grounds*, 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984). Since this Court can not conclude that defendant's statements in his Application for Naturalization were intended to prove any fact to a court or tribunal, this Court finds that the statements in the application, in and of themselves, do not constitute false testimony under 8 U.S.C. § 1101(f)(6). Thus, summary judgment is not appropriate on a false testimony theory which relies exclusively on the written statements in the application.

**2. *False answers during interview with INS officer.***

■ On the other hand, an applicant's false oral statement made under oath in a question and answer examination before an INS officer during any stage of the process for naturalization constitutes "false testimony" within the meaning of 8 U.S.C. § 1101(f)(6). *Bernal v. I.N.S.*, 154 F.3d at 1023.

■ The government alleges that, at the December 14, 1995 interview, defendant was asked, *inter alia*, if he had ever been arrested or convicted, and defendant responded that he had no criminal record. (MSJ 13–14.) The United States contends that this affirmative misrepresentation, made orally under oath, was made at least in part with the subjective intent of obtaining naturalization. (MSJ 14.) Thus, the United States argues that because defendant made these false oral statements, he is statutorily precluded from establishing good moral character. (MSJ 14.)

Defendant denies making any such false oral statements. Defendant contends that he "didn't tell [the INS officer] that [he] had been arrested because [he] didn't hear any question like that" at his interview. (Appendix to MSJ, Exh. 9, p. 50.) In addition, defendant asserts that the record discloses discrepancies in the method used by the INS officer to annotate the written application to reflect defendant's oral responses to questions; defendant argues that these discrepancies create doubt as to whether the INS officer actually asked defendant about his criminal record. (*See* MSJ, Exh. 1D, Exh. 2, p. 4; Supp. MPA 12–14; Appendix to MSJ, Exh. 2, pp. 2–3.)

 The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that such officers have properly discharged their official duties. *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *United States v. Chemical Foundation,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926).

Here, the Court finds that defendant has identified sufficient evidence of discrepancy to rebut the presumption of regularity that generally would be accorded the INS officer's description of his method of questioning applicants for naturalization and documenting their answers. Thus, the Court finds that genuine issues of material fact exist as to whether defendant actually gave false oral testimony at his interview.

Accordingly, the Court denies the government's motion for summary judgment on count four.

**E. Summary Judgment Is Appropriate on the Ground Defendant Procured His Naturalization Through Willful Misrepresentation.**

 Naturalization obtained through willful misrepresentation or concealment of material facts must be revoked. *See* 8 U.S.C. § 1451(a). This provision contains four requirements: (1) the naturalized citizen must have misrepresented or concealed some fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States,* 485 U.S. at 767, 108 S.Ct. 1537. "The test of whether a defendant's concealments or misrepresentations were material is whether they had a natural tendency to influence the decisions of the Immigration and Naturalization Service." *Id.* at 771, 108 S.Ct. 1537.

 The United States contends that defendant's "no" answers to questions regarding prior arrests and convictions in his naturalization application and the omission of his criminal history from that application constitute willful misrepresentation and concealment of material facts. (MSJ 16–17.)

Defendant denies this accusation. At his deposition, defendant testified that he disclosed his full criminal history to a notary public, who prepared his naturalization application. (Appendix to MSJ, Exh. 10, pp. 40–43.) At the April 15, 2003 hearing, defense counsel argued that there was a genuine issue of material fact as to whether the misrepresentation was willful because defendant may not have understood what information was being included on his application. Counsel further argued that when defendant applied for permanent residency, he submitted a certificate of complete on of an elementary school education program while in prison. The certificate contained defendant's signature on a line designated for "INMATE SIGNATURE." (Reply, Exh. B.) Defendant also provided his fingerprints at that time. (*Id.*) Defendant argues that this evidence

proves that he had no intention of concealing his criminal record because he assumed the INS would have already processed his fingerprints and been aware of his criminal history. (*Id.*)

The argument is unavailing. At the time of defendant's interview, he spoke, read, wrote, and understood English. (Appendix to MSJ, Exh. 1E.) Defendant signed his application on October 25, 1994, "certify[ing] ... under penalty of perjury ... that this application and the evidence submitted with it is all true and correct." (Appendix to MSJ, Exh. 1D, part 11.) Even crediting defense counsel's argument that defendant may not have understood what the notary public had written on his application when it was prepared, defendant was given an opportunity on December 14, 1995 to review his application after discussing it in his INS interview; he then, within the body of the application, certified that the information was true:

> I swear that I know the contents of this application, and supplemental page[ ] 1[ ] that the corrections, numbered 1 through 7, were made at my request, and that this amended application, is true to the best of my knowledge and belief.

(Appendix to MSJ, Exh. 1D, part 12.)

The Court finds that this oath and defendant's false criminal history responses in the application collectively establish a willful misrepresentation. It is undisputed that defendant knew he had been convicted on two prior occasions, yet he answered "no" to questions asking if he had any prior convictions, and he affirmed those answers at his interview when he signed his application under oath. Defendant's misrepresentation involved a material fact; his prior convictions rendered him ineligible for citizenship. Moreover, defendant procured citizenship as a result of the misrepresentation or concealment. There being no dispute over any of these elements,

summary judgment is granted as to count five.

## F. The Government Is Not Required to Use Evidence Outside the Record to Support Its Action for Denaturalization.

██ Defendant asserts in his Second Supplemental Brief that the government may only bring a complaint to revoke his citizenship based on new evidence outside the original record, and that the evidence relied on by the government in this case was not outside the record. (Second Supp. Br. 2.) Defendant contends that evidence of illegal procurement, or sufficient information for the INS to establish illegal procurement upon proper investigation, was in his INS "245" application for lawful permanent residency before the time of his naturalization application; therefore, defendant asserts, the government is precluded from using that information to challenge his naturalization. (Second Supp. Br. 9–13.)

Defendant points to his February 25, 1998 response to the government's Notice of Denaturalization. (Reply, Exh. B.) In that response, he emphasized that in about 1989, when he applied to become a permanent resident, he had submitted a certificate of completion of an elementary school educational course at a state prison, along with his fingerprints. Defendant argues that this evidence, had it been investigated, would have disclosed his criminal conviction for murder. (Second Supp. Br. 9–13.) As defendant's argument goes, since this evidence was in his INS "245" file, it could not be used by the government against him in a denaturalization action. (Second Supp. Br. 11.)

Defendant cites *Bindczyck v. Finucane,* 342 U.S. 76, 72 S.Ct. 130, 96 L.Ed. 100 (1951) to support his argument. This reliance is misplaced. The *Bindczyck* Court's

holding expressly precluded, under former section 8 U.S.C. § 338, a state court's cancellation of citizenship on the basis of fraudulent or illegal procurement not appearing on the face of the record. *Id.* at 79, 83–84, 72 S.Ct. 130. That ruling does not impact this denaturalization action in U.S. District Court. In fact, the text of 8 U.S.C. § 1451(a), the controlling statute and successor to § 338, expressly designates the district courts as the proper venue for denaturalization based on fraudulent or illegal procurement. By the same token, 8 U.S.C. § 1451(a) contains no language requiring or even suggesting that an action for revocation of citizenship fraudulently procured must be based on evidence "outside the original record." Accordingly, the Court rejects defendant's contention that the government cannot prosecute this action because it is ostensibly based on evidence the government knew of, or should have known of, prior to naturalization.

**G. Defendant's Inclusion of a Prison Education Certificate in His INS Application for Permanent Residence Does Not Create a Genuine Issue of Material Fact as to Defendant's Willful Misrepresentation of His Criminal History.**

■ Defendant argues that the government has an affirmative duty to investigate petitions for citizenship if it is put "on notice" that the petitioner may not qualify for citizenship. Defendant asserts that the government failed in its duty and is therefore now precluded from seeking his denaturalization. The contention that the government is somehow barred from denaturalizing a citizen when it knew or should have known, before naturalization, that the individual was ineligible, fails for three reasons:

First, even if this Court were, arguendo, to assign knowledge of the certificate of completion to the government, it would not find that the government was thus put on notice of the nature of defendant's criminal history. There is no contention that the certificate identified the underlying offense which resulted in defendant taking a prison elementary education course; there is no contention that the certificate revealed whether the conviction was a crime involving moral turpitude, or the length of the sentence.

Second, the certificate did not, in fact, provide any notice to the government because, as the government notes in its surreply, the certificate was not part of the file considered by the INS in determining defendant's eligibility for naturalization. (Plaintiff's Sur–Reply to Defendant's Second Supplemental Brief, pp. 2–3 n. 2.) This is not in dispute. As the government indicates is customary, defendant had two separate INS files—one for his application for permanent resident status, and one for his Application for Naturalization. The government has correctly noted that those applications sought different immigration benefits. It is undisputed that defendant submitted his certificate with his application for permanent residency, not with his Application for Naturalization. (Reply, Exh. B.)

Third, it is universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect. *Berenyi v. District Director, Immigration and Naturalization Service,* 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967); *see also Price v. U.S. I.N.S.,* 962 F.2d 836, 843 (9th Cir.1991). Shifting the burden to the government to conduct a detailed investigation of every item, no matter how remote, that might conceivably prove the falsity of an applicant's sworn statements would most likely bring the naturalization process to a grinding halt. This Court is aware of no authority justifying placement of such a burden on the government.

Defendant's reliance on *Chaunt v. United States*, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960), is also misplaced. There, the government sought denaturalization on the ground that the defendant had failed to disclose that he had been arrested three times for violations that did not involve moral turpitude. The government asserted that the disclosure of those arrests in the nature of disturbing the peace, unauthorized handbill distribution, and unauthorized public oration would have led to the government's discovery of defendant's activities as a Communist Party "district organizer." *Id.* at 354, 81 S.Ct. 147. The court rejected the government's contention because the defendant had disclosed that he was an employee and member of the International Workers' Order, an organization closely affiliated with the Communist Party. *Id.* at 354–55, 81 S.Ct. 147. The Court stated: "Had that disclosure not been made in the application, failure to report the arrests [occurring from 10 to 11 years previously] would have had greater significance. It could then be forcefully argued that failure to disclose the arrests was part and parcel of a project to conceal a Communist Party affiliation." *Id.* at 355, 81 S.Ct. 147.

In stark contrast with *Chaunt* where the defendant's Communist Party ties were apparent in his application, defendant here completely omitted any mention of, or reference to, his criminal history in his Application for Naturalization. In this case, his criminal history documenting acts of moral turpitude was critical. Had his criminal convictions been disclosed in the naturalization application, the INS would have immediately determined that defendant was not eligible for naturalization and would not have granted him citizenship. No information was provided in defendant's naturalization application that even hinted, much less stated, that he was a convicted felon. To the contrary, defendant swore under penalty of perjury that he had no criminal record.

Defendant has failed to cite any authority supporting his proposition that the government has an affirmative duty to recognize and investigate every potentially disqualifying detail of every naturalization application before it proceeds with naturalization; this Court rejects that argument. The Court rejects defendant's contention that the government is legally barred from seeking denaturalization.

**H. Laches**

In his Answer, defendant raises the affirmative defense of laches based on "excessive delay" in bringing this denaturalization proceeding. (Answer 2–3.)

The relevant statute, 8 U.S.C. § 1451(a), does not provide any time limitation for instituting denaturalization proceedings. *Costello v. United States*, 365 U.S. 265, 283, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) ("But Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud."); *Petition of De Roma*, 603 F.Supp. 127, 130–31 (D.N.J.1985) (same). Moreover, the Supreme Court has repeatedly held that laches is not available as a defense in denaturalization proceedings because federal courts have no equitable powers in such actions. *See Fedorenko*, 449 U.S. at 517, 101 S.Ct. 737 ("district court lacks equitable discretion to refrain from entering a judgment of denaturalization against a naturalized citizen whose citizenship was procured illegally or by willful misrepresentation of material facts"); *United States v. Ginsberg*, 243 U.S. 472, 474, 37 S.Ct. 422, 61 L.Ed. 853 (1917) ("An alien who seeks political rights as a member of this nation can rightfully obtain them only upon terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their

duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare."). The Supreme Court has emphasized, "this issue has been settled by prior decisions of this Court. In case after case, we have rejected lower court efforts to moderate or otherwise avoid the statutory mandate of Congress in denaturalization proceedings." *Fedorenko,* 449 U.S. at 517, 101 S.Ct. 737.

Thus, this Court rejects defendant's laches defense.

### V. CONCLUSION

Summary judgment is granted in favor of the government on counts two, three, and five. Summary judgment is denied on count four. Having determined that denaturalization is mandated by grants of summary judgment as to counts two, three, and five, a trial on the remaining counts one and four would have no legal significance. Thus, counts one and four shall be dismissed without prejudice.

### ORDER

Accordingly, **IT IS HEREBY OR-DERED** that the naturalization of defendant ordered by the Attorney General of the United States, admitting defendant to United States citizenship, is revoked and set aside. Certificate of Naturalization No. 21799944 is hereby canceled. Defendant is forever restrained and enjoined from claiming any rights, privileges, or advantages under any document which evidences United States citizenship obtained as a result of defendant's February 22, 1996 naturalization.

**IT IS FURTHER ORDERED** that defendant surrender and deliver his Certificate of Naturalization, and any copies thereof in his possession (and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others), to the Attorney General or his representative immediately. IT IS ALSO ORDERED that defendant relinquish to the Attorney General or his representative any other indicia of United States citizenship, and any copies thereof in his possession (and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others), including, but not limited to, United States passport, voter registration card, and other voting documents.

**IT IS SO ORDERED.**

### PARTIAL SUMMARY JUDGMENT

IT IS ADJUDGED that Judgment be entered granting plaintiff's Motion for Partial Summary Judgment as to counts two, three, and five of the Complaint. Counts one and four are dismissed without prejudice